IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                            |   |                                 |
|--------------------------------------------|---|---------------------------------|
| JOSEPH INNES, et al.                       | : |                                 |
|                                            | : |                                 |
| v.                                         | : | Civil Action No. DKC 13-2800    |
|                                            | : |                                 |
| THE BOARD OF REGENTS OF THE                |   |                                 |
| UNIVERSITY SYSTEM OF MARYLAND,             | : |                                 |
| et al.                                     |   |                                 |
|                                            | : |                                 |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination case is a motion for a protective order filed by Defendant Wallace D. Loh. (ECF No. 45). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for a protective order filed by Defendant Wallace D. Loh will be granted.

**A. Background**

Plaintiffs Dr. Joseph Innes ("Dr. Innes"), Daniel Rinas ("Mr. Rinas") and Sean Markel ("Mr. Markel"), who are deaf, sued the University of Maryland, the Board of Regents, and Wallace D. Loh ("President Loh"), in his official capacity as the President of the University of Maryland, for alleged violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and the Rehabilitation Act, 29 U.S.C. § 504. (ECF No.

33, at 8-10).   Plaintiffs regularly attend sporting events at the Comcast Center and Byrd Stadium, located on the University of Maryland's main campus in College Park, and attempt to watch videos on the University's athletic website.   Plaintiffs allege that Defendants failed to provide effective communication for deaf fans both at the games at Byrd Stadium and the Comcast Center and on the University's athletic website.

On April 28, 2014, President Loh filed a motion for a protective order under Fed.R.Civ.P. 26(c), seeking to bar the taking of his deposition.   (ECF No. 45).   President Loh was scheduled to be deposed on May 7, 2014.   (*See* ECF No. 45-1). The parties jointly moved to stay President Loh's deposition pending the resolution of the instant motion, which the undersigned granted.   (ECF Nos. 47 & 48).   Plaintiffs opposed President Loh's motion on May 7, 2014 (ECF No. 53), and Defendant replied on May 19, 2014 (ECF No. 55).

## II. Analysis

Although he may be dismissed as a party to this lawsuit, Plaintiffs indicate in their opposition to the motion that "[President] Loh is an appropriate witness for deposition, whether or not he remains as a party defendant."   (ECF No. 53, at 4).

On January 29, 2014, Plaintiffs noted three depositions: (1) the Fed.R.Civ.P. 30(b)(6) deposition of the University of

Maryland; (2) the Fed.R.Civ.P. 30(b)(6) deposition of the Maryland Stadium Authority, which oversaw the construction of the Comcast Center and the renovation of Byrd Stadium; and (3) the deposition of President Loh. (ECF No. 45-3, at 2). The University of Maryland produced three different witnesses for deposition: Kevin Anderson, the University Athletic Director; Gabriel Unterman, the University Director of Multimedia Production; and Joshua Kaplan, the University Assistant Athletic Director of Facilities and Events. President Loh argues that requiring his deposition would be fruitless because, unlike the University of Maryland's three 30(b)(6) deponents, he has no knowledge of the subjects related to Plaintiffs' second amended complaint and even if he did, his testimony would be duplicative of information that the other deponents have already provided.

Fed.R.Civ.P. 26(c) states, in pertinent part, that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The general standard for discovery under Fed.R.Civ.P. 26 is relatively broad:

> Rule 26 governs discovery entitlement and provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any part . . . ." Fed.R.Civ.P. 26(b)(1). While the Federal Rules of Civil Procedure do not define relevance, the Federal Rules of Evidence do, as "evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Or, as rephrased in the commentary, "[d]oes the item of evidence tend to prove the matter sought to be proved?"

*United Oil Co., Inc. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 409 (D.Md. 2005) (footnote omitted). The Fourth Circuit has explained that discovery requests may be limited in appropriate cases:

> On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit "the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2). Further, upon motion of a party and "for good cause shown," the court in the district in which a deposition is to be taken may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the discovery not be had. Fed.R.Civ.P. 26(c).

*Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). "District courts have broad discretion in [their]

resolution of discovery problems." *Mylan Labs, Inc. v. Akzo*, *N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).

Plaintiffs argue that deposing President Loh would yield relevant information related to this action. First, Plaintiffs believe that President Loh has personal knowledge of matters relevant to this case. They point to excerpts from Gabriel Unterman's deposition, in which he testified that the Office of the President – Defendant Loh's office – established a committee to deal with making all of the University of Maryland's websites accessible to individuals with disabilities, including the Athletic Department website. (ECF No. 53-1, at 4, dep. of Gabriel Unterman ("I'm a part of an IT accessibility committee, which is a committee that was formed by the president's office to tackle the issue of . . . website accessibility university-wide."). Mr. Unterman stated that the charge "from the president's office [was] to look and assess our websites university-wide and see what we need to do to get them accessible, ADA compliant." (*Id.* at 5). Plaintiffs aver that President Loh "could have important information about why this Committee was formed, who made the decision to form it, and more details about its goals and outcomes." (ECF No. 53, at 3). But as Defendant points out, the Office of the President "houses multiple executives who each have broad discretionary power and authority to act on a day-to-day basis independent of President

Loh" and the fact that President Loh's office created this committee does not mean President Loh is knowledgeable about this committee. (ECF No. 55, at 7-8). Plaintiffs have deposed Kevin Anderson, the Director of Athletics at the University of Maryland, who, according to Plaintiffs, testified that he was aware of the accessibility committee, and had conversations with Dr. Loh about accessibility and the Athletic Department. (ECF No. 53, at 3). Mr. Anderson's deposition contradicts this point. Specifically, during the deposition, Mr. Anderson was asked whether he discussed the committee on website accessibility with President Loh, to which he responded: "I have not." (ECF No. 55-1, at 7). When asked who was involved with this committee, Mr. Anderson identified Gabe Unterman. (*Id.* at 11). Mr. Anderson acknowledged that he often meets with President Loh regarding specific budget issues related to the athletic department, but stated that *he* approved to buy the ribbon board at Byrd Stadium and the Comcast Center, [r]egardless of what, how -- the cost." (ECF No. 55-1, at 11).

Plaintiffs further argue that "[i]n addition to the work of the Committee, what the President himself is aware of is important information regarding the steps the University may or may not take to address its accessibility issues." (ECF No. 53, at 3). Defendant Loh's affidavit suggests otherwise. President Loh declares that he has "no personal knowledge of the

6

captioning capabilities of the Comcast Center, Byrd Stadium, or
videos streamed on any website related to the University or the
University's athletic department." (ECF No. 45-2 ¶ 8). He
further avers that he has:

> not been immersed in the details of specific
> University initiatives regarding the
> University's compliance with the Americans
> with Disabilities Act and other similar
> federal or state laws, including University
> of Maryland Intercollegiate Athletics'
> efforts to maintain best practices regarding
> the accessibility of Athletic events and
> websites to handicapped individuals.

(*Id.*) (emphasis added). He states that "with the exception of
being briefed by University Counsel, my staff has not briefed me
in detail regarding [the issues in this litigation]." (*Id.*).
This declaration is bolstered by deposition testimony from
Joshua Kaplan, the Assistant Athletic Director for Facilities,
Operations, and Events, who avers that ultimately, it was his
responsibility to ensure compliance with Title II of the ADA and
Section 504 of the Rehabilitation Act. (ECF No. 55-2, at 7).
Mr. Kaplan also testified that the decision to provide
captioning on hand-held devices for deaf patrons was a
"collaborative decision [between him,] Kelly Mehrtens[, his
supervisor] and Kevin Anderson." (*Id.* at 19). Nowhere in his
deposition does Mr. Kaplan point to President Loh's involvement.
Mr. Anderson's deposition also identifies Joshua Kaplan as the
individual who oversees all of the facilities at the University

of Maryland and who is responsible for "signing off and going through the procurement process to purchase [the hand-held equipment.]" (ECF No. 55-1, at 7). He identified Mr. Kaplan as being responsible for ensuring that the technology the University purchased had captioning capabilities. (*Id.* at 18).

Plaintiffs next argue that President Loh has been involved with the University of Maryland's decision to leave the Atlantic Coast Conference ("ACC") and move to the Big 10 Athletic Conference. Thus, Plaintiffs believe that "[President] Loh knows about ownership of the website, whether the day-to-day activities on the website will be transferred to the Big Ten, whether the Big Ten will pick up costs of the website, and whether the Big Ten has plans to caption the website or at least pay part or all of the costs of captioning." (*Id.* at 4). Kevin Anderson's and Joshua Kaplan's depositions suggest that Plaintiffs have already obtained this information from these deponents and there is no indication that President Loh would have additional insight. Specifically, Mr. Anderson was asked "what impact will the move to the Big Ten have on [accessibility discussions]," to which he responded:

> That we don't know. We know that some of the video live streaming that we have now will not be on our website anymore, that Big Ten will take that, have the media rights to take some of those things over.

(ECF No. 55-1, at 14).   Similarly, Joshua Kaplan was asked about

the Big Ten during his deposition:

> Q: And when do you expect to hear from the
> Big Ten on what, what will, you know, what
> will happen to the [] umterps.com website
> and the videos that are associated with it?
>
> A: Well, the Big Ten doesn't have any
> control per se over our videos that we put
> on there.   What we're waiting for is for
> them to announce what they're broadcasting,
> so the process with the ACC will mirror what
> the process was for the Big Ten in regards
> to live events.
>
> Q: But as far as switching to, University of
> Maryland joining the Big Ten and the Big Ten
> Network, will that have any effect on the
> preproduced videos on umterps.com?
>
> A: Not preproduced.
>
> Q: Just live?
>
> A: Just live.

(ECF No. 55-2, at 33, 35).   As Defendant points out, "[t]here is

no reason to believe that the University President, who

necessarily must depend on his subordinates to manage the

details of the University's various operations, would be in a

better position to explain how or why these things remained

unsettled."   (ECF No. 55, at 6).

Plaintiffs next argue that:

> [President] Loh also has relevant
> information about the importance of
> athletics and its place at UMCP. . . . To
> the extent the President of the University
> believes that athletics is an important part

9

>       of the University and aids in recruiting
>       students, that information is relevant to
>       the need to make all athletics programming
>       accessible.

(ECF No. 53, at 3).  This argument is unavailing.  President

Loh's beliefs regarding the importance of athletics at the

University of Maryland and its role in student recruitment is

not relevant to the instant litigation, in which Plaintiffs

allege disability discrimination on the basis of Defendants'

failure to offer effective communication in aural information

displayed at Byrd Stadium, the Comcast Center, and the athletic

website at the University of Maryland.

President Loh contends that the burden he faces if deposed

"greatly outweighs the non-existent benefit that the plaintiffs

would enjoy from his deposition."  (ECF No. 45-3, at 4).  He

points to his busy travel schedule, meetings with potential

donors, and role as the University's ambassador to outside

individuals and institutions.  Considering the information

Plaintiffs have already obtained from deposition testimony of

Kevin Anderson, Joshua Kaplan, and Gabe Unterman, the matters

Plaintiffs seek to explore during President Loh's deposition

(ECF No. 55-4), and President Loh's affidavit disclaiming

knowledge of specific decisions and discrete services, networks,

and technology pertaining to this litigation, the burden would

outweigh the benefit in this case.  Plaintiffs rely on *Minter v.*

*Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 126 (D.Md. 2009), but it is inapposite. In *Minter*, the court declined to grant a protective order to preclude the deposition of a high-level executive who claimed to lack unique or personal knowledge because "there [was] direct evidence to the contrary." This is not the case here. Nothing on the record contradicts President Loh's affidavit disclaiming relevant knowledge. *See Sharma v. Lockheed Engineering & Mgmt. Servs. Co., Inc.*, 862 F.2d 314, 1988 WL 118154, at *3 (4th Cir. 1988) ("By affidavit, the proposed deponent Robert Young stated that he does not personally know Sharma and has no personal knowledge regarding the allegations of Sharma's complaint. While such a statement by itself will not always be sufficient to justify a protective order, it does establish that, in this case.").

Defendant submits that Assistant President Michele Eastman is the more appropriate candidate for deposition because she has knowledge of facts and events related to the allegations in Plaintiffs' second amended complaint. (ECF No. 45-3, at 7). Specifically, Defendant avers that "Assistant President Eastman has knowledge about the University's internet accessibility committee that was discussed during the University's 30(b)(6) depositions." (*Id.*). Although Plaintiffs have argued that Ms. Eastman was not identified as a relevant witness by any of the deponents or in responses to the interrogatories, they request

that they be permitted to depose her in the event that the protective order is granted.  For the foregoing reasons, the protective order as to President Loh will be granted. Plaintiffs may depose Michele Eastman.

### III. Conclusion

The motion for a protective order filed by Defendant Wallace D. Loh will be granted.  A separate order will follow.

                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge