# EXHIBIT 15

BROWN GOLDSTEIN LEVY

Joseph B. Espo
jbe@browngold.com

Also a member of the District of Columbia bar

April 18, 2013

Carolyn W. Skolnik
University Counsel
University of Maryland
2101 Main Administration Building
College Park, Maryland 20742

Re: Captioning of Athletic Events

Dear Ms. Skolnik:

With the National Association of the Deaf I represent Dr. Jay Innes and Sean Markel. I write in response to your letter of March 29. Regrettably, the University's failure to consult with the individuals who are most in need of captioning resulted in the University proposing an unacceptable plan that does not remedy the existing problems.

First, the interest of historical accuracy requires me to say that the February 8, 2013 letter was not the first time the absence of captions was brought to the University's attention. Over the years Dr. Innes repeatedly requested of officials of the Terrapin Club that captioning be provided. Each of those individuals, who are identified as University of Maryland employees, assured Dr. Innes that his request would be looked into. Apparently, those requests not only were not looked into but never made their way to other university officials.

The University's proposal is untenable not because it has been so late in coming, but because it will not provide effective communication for Dr. Innes, Mr. Markel and other deaf individuals and it imposes an unequal burden on deaf attendees. Indeed, hand-held devices are a decidedly second-class means of providing communication to deaf fans during sporting events.

The proposal will not provide effective communication. It relies on what as far as we can tell is untested software that will attempt to convert human speech to captions. While the NAD is familiar with some programs that purport to perform such conversion the NAD is unfamiliar with any that actually work as advertised. Therefore, we believe the "solution" won't work.

Because of the nature of hand-held electronic devices and the environment in which they will be used, the University's proposal would not result in effective communication even if the captioning software functioned perfectly. Many devices such as the iPhone, iPad, other smart phones and the Nook are not readable in bright sunlight or by individuals wearing sunglasses. In rainy weather holding an electronic device in such a way to allow it to be read would also allow it to get wet, likely damaging the device. As you may know, iPhones in particular are easily damaged by moisture. Thus, at best, the proposed solution would allow football fans to see

captioning only on those game days that are cloudy but not wet, and would not provide effective communication at any other time.

The proposal also imposes additional burdens on deaf fans. The mere act of requiring an individual to hold a device at all times prevents them from simultaneously holding both food and drink, as other fans do. It also prevents deaf fans, who communicate using American Sign Language, from chatting with friends or cheering while also holding food *or* drink. Neither of these burdens result when captions are displayed on scoreboards, LED ribbon boards and Jumbotrons, as originally requested.

Reading captions through a hand-held device requires fans to look away from the field and focus on a close object in order to access announcements, then re-focus on the distant field to access the game. This process is much more difficult than simply viewing captions on a distant LED projector, ribbon board, or Jumbotron, that is already positioned to enable fans to move their gaze easily from the text to the field or that already displays a video-feed of the game.

Fans who do not own a hand-held device capable of streaming captions would assume even greater burdens. The proposal - providing iPad minis to all deaf fans who want to use them - would require each fan to stand in line before the game to retrieve the device and require that they return them at the end, a burden not imposed on hearing fans, and not imposed on any fan if captioning appears on scoreboards, LED ribbon boards and Jumbotrons instead. Your letter also doesn't address who would be responsible if the device is lost, stolen, damaged or otherwise not returned to the University.

Moreover, your statement that the scoreboards, LED ribbon boards and Jumbotrons currently in place do not have technology to allow captioning is, even if accurate, legally irrelevant. The Comcast Center was built well after the ADA was passed and an even longer period of time after the passage of the Rehabilitation Act. Therefore, the university was obligated to acquire equipment that permits captioning.

While Byrd Stadium is significantly older than Comcast Center it underwent major renovations in 2007, at which time accessibility could and should have been addressed. As noted in the University of Maryland web site:

> The recently completed $50.8 million upgrade to Byrd began in November 2007 and included the expansion of Tyser Tower along the South concourse, allowing for the addition of 64 suites. Additionally, new mezzanine seating for 440 patrons was added, as well as a University suite for 200 guests. There are new work areas for the television, radio and print media, coaches and game-day

---

> staff, as well as improved seating for disabled customers. In addition, the recent expansion, which increased the stadium's capacity to 54,000, included a state-of-the-art scoreboard on the west concourse, which was unveiled prior to the 2008 season.

http://www.umterps.com/facilities/md-byrd-stadium-football.html. Because that renovation was conducted long after the relevant statutes were passed it, too, should have been made compliant with the ADA.

REDACTED

We would appreciate a response within 14 days.

Sincerely,

Joseph B. Espo

JBE/es