**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSEPH INNES, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. DKC 13-cv-2800 |
| BOARD OF REGENTS, *et al.*, | * | |
| Defendants. | * | |

* * * * * * * *

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO**
**EXCLUDE EXPERT OPINION OF JEFFREY B. PELZ, PH.D.**

Defendants, by their attorneys, submit this memorandum in support of their motion to exclude the testimony of Jeffrey B. Pelz, Ph.D., who has been designated by Plaintiffs as an expert witness.

## INTRODUCTION

Dr. Pelz is a professor of imaging science at the Rochester Institute of Technology. Ex. 1 at p.1. He was designated by Plaintiffs to offer expert testimony regarding the sufficiency of the captioning system implemented by the University of Maryland at Byrd Stadium and Comcast Center after receiving the Plaintiffs' demand in February 2013.

Dr. Pelz stated in his expert report and at his deposition that in his opinion captions should be provided near the natural line of sight and with a minimum number of errors. Ex. 1 at p. 15; Ex. 2, Pelz. Dep. at 67:14-17. He also opined that in his opinion the captioning

system supplied by the University of Maryland does not meet these standards. Ex. 1 at p. 15.

Dr. Pelz's opinion lacks the necessary indicia of reliability required by Federal Rule of Evidence 702. His opinion is based on a wholly unscientific and patently unfair study that, if presented to the jury, could only confuse and mislead it. Accordingly, as set forth in more detail below, his testimony should be excluded for purposes of summary judgment and trial.

**ARGUMENT**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, *if (1) the testimony is based upon sufficient facts or data*, (2) the testimony is the *product of reliable principles and methods*, and (3) the *witness has applied the principles and methods reliably to the facts of the case*.

Fed. R. Evid. 702 (emphasis added).

The Supreme Court, in discussing the requirements of Rule 702, "has emphasized that federal judges bear a 'gatekeeping responsibility' to ensure that admitted testimony is both relevant and reliable." *Higgins v. Diversey Corp.*, 998 F. Supp. 598 (D. Md. 1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n. 7 (1993)). This "gatekeeping responsibility" applies not only to "scientific" testimony, but to all expert testimony. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp.2d 378, 391 (D. Md. 2001) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "Parties have every incentive to hire 'outlier' experts with sincere but extreme views so long as they can conceal the outlier status." David E. Bernstein, *Frye, Frye Again: The Past, Present, and Future of the General*

*Acceptance Test,* 2 Bureau of National Affairs Expert Evidence Report (Feb. 18, 2002). Rule 702, properly applied, acts as a bulwark against the "concealed outlier" and the distorted results that would be triggered by acceptance of their unreliable testimony.

"*Kumho Tire* emphasizes that the purpose of Rule 702's gatekeeping function is to 'make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 203 (4th Cir. 2001) (*citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Furthermore, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157 (*quoting Joiner*, 522 U.S. at 146). "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). *See also Kumho Tire*, 526 U.S. at 157 (stating that "nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (internal quotation marks omitted) (quoting *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997)). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997).

**A. Dr. Pelz's Opinion That The Captioning Provided By The University Of Maryland Is Insufficiently Accurate Is Inadmissible As It Is Not The Product Of Scientific, Technical, Or Other Specialized Knowledge.**

Both in his report and his deposition Dr. Pelz opined that the captioning provided by

the University of Maryland is not sufficiently accurate to effectively communicate. His opinion regarding the quality and the accuracy of the captioning does not involve special or scientific knowledge, as he readily admitted. He has never done any research on captioning and does not purport to be an expert regarding it. Ex. 2, Pelz. Dep. at 78:13-15. As he agreed, his observations regarding accuracy "are really observations that could be made by any person who could read and listen." *Id.* 75: 8-12. Similarly, his observations regarding the difficulty he had accessing the system were also observations that could be made by "anybody who tried to use the system." *Id.* at 76:11-19.

Accordingly, Dr. Pelz's opinions on these subjects are merely inadmissible lay opinion masquerading as expert testimony. Plaintiffs themselves can readily testify regarding their experiences with the University of Maryland's present captioning system. Dr. Pelz's opinions on these subjects should be excluded.

**B. Dr. Pelz's Opinion That Plaintiffs Must Have Line-of-Sight Captioning Is Not Supported By Demonstrably Reliable Science.**

Dr. Pelz's opinion regarding the need for line-of-sight captioning does not satisfy Rule 702's standard of evidentiary reliability. To meet this standard, Plaintiffs must demonstrate that Dr. Pelz's "expert testimony is 'grounded in the methods and procedures ... [and] supported by appropriate validation – *i.e.*, good grounds, based on what is known.'" *Higgins v. Diversey Corp.*, 998 F. Supp. 598, 602 (D. Md. 1997) (citing *Daubert*, 509 U.S. at 590).[1]

[1] *Daubert* identifies four non-exhaustive factors that a court may consider in determining whether to admit an expert opinion as reliable, including (1) whether a "theory or technique … can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) whether, with respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the

"[C]onjecture, hypothesis, 'subjective belief, or unsupported speculation' are impermissible bases for expert opinion and must be discarded." *Cavallo v. Star Enter.*, 892 F. Supp. 756, 761 (E.D. Va. 1995), *aff'd on these grounds*, 100 F.3d 1150 (4th Cir. 1996) (quoting *Daubert*, 509 U.S. at 590).

Dr. Pelz opines that effective communication with the Plaintiffs requires the use of line-of-sight captioning at all athletic events. He performed a small experiment to "verify" his conclusion. However, Dr. Pelz did not conduct a scientifically valid study. To the contrary, Dr. Pelz conducted a study that he readily admits is not statistically valid and was not designed to produce statistically significant data. *Id.* at 64:1-4.

Essentially, Dr. Pelz attended an actual game where he used specialized equipment to monitor eye movement. *Id.* at 36:18-37:2. This study consisted of exactly two individuals – one who was deaf and one who was not. *Id.* at 59:8-16. Compounding the problem of this patently unscientific sample, he made no effort to control the variables that would influence the data or to include in his study meaningful comparisons that would give his opinion credibility. So, for example, he measured the eye movements of a deaf observer who was presented with captioning, but did not control by measuring the eye movements of a deaf observer who was *not* presented with captioning. *Id.* at 59:19-61:2. Similarly, he measured the eye movements of a hearing observer not presented with captioning, but did not control by measuring the eye movements of a hearing observer presented with captioning. *Id.*

Furthermore, Dr. Pelz did not measure the visual acuity of the test subjects and

---

technique's operation"; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Kumho Tire*, 526 U.S. at 149-50 (quoting *Daubert*, 509 U.S. at 592-94.

therefore did not control for differences in the quality of their vision. *Id.* 61:3-63:21. He admits that differences in visual acuity could affect the ability to read captions. *Id*. He did not present, or rely on, any published, peer reviewed data comparing the distribution of visual attention when captioning is presented directly on a scoreboard as opposed to hand-held devices. *Id.* at 64:7-15. Dr. Pelz failed to present, or rely on, any data comparing the captioning system currently supplied by the University of Maryland on hand-held devices with the line-of-sight captioning advocated by Plaintiffs. *Id.* at 64:16-19, 67:21-6.

Having stacked the scientific deck, Dr. Pelz reports that the deaf person spent, in one interval, 13 percent, and in another interval, 7 percent, of his time observing captions on a hand-held device that the non-deaf person spent observing play on the court. Ex. 1 at 10-11. Dr. Pelz has no data, because his experiment was not designed to measure for it, regarding how much time a deaf person would spend looking at captions if the captions were instead displayed on the scoreboard. In other words, he has no data to demonstrate that the Plaintiffs' preferred accommodation is superior and, if so, to what degree. Due to the small sample, and the abject failure to control for any variables, we have no way of knowing if either of the test subjects represents the "average" time that a deaf or hearing person would spend gazing at various focal points.

Dr. Pelz also did not test the Plaintiffs' comprehension of the captioning currently supplied by the University of Maryland. *Id.* at 74:3-13. He did not consult with other experts who were in a position to assess the actual level of comprehension the average deaf individual is able to derive from the University's captioned material. *Id.* at 74:11-20.

Dr. Pelz's testimony "amounted to a wholly conclusory finding based upon his

subjective beliefs rather than any valid scientific method." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001). Where an expert opinion "appears to be based more on supposition than science," as here, the court is within its discretion to exclude that evidence. *O'Neill v. Windshire-Copeland Assocs., L.P.*, 372 F.3d 281, 285 (4th Cir. 2004); *see also Cooper*, 259 F.3d at 203 (district court properly excluded evidence where expert's "insufficient" methodology rendered opinion "little more than speculation"). Dr. Pelz's opinions, rendered both in his report and deposition testimony, are unsupported and unreliable. Accordingly, the court must exclude these opinions as *ipse dixit* evidence.

**CONCLUSION**

For the foregoing reasons, Defendants request that the Court exclude Dr. Pelz's testimony from its consideration of the parties' cross-motions for summary judgment and from any trial of this matter.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

/s/
Paul D. Raschke, Bar No. 03428
Stephanie Shea, Bar No. 28987
Assistant Attorney General
Office of the Attorney General
Educational Affairs Division
200 Saint Paul Place, 17th Floor
Baltimore, Maryland 21202
(410) 576-6316
(410) 576-6437(fax)
praschke@oag.state.md.us
sshea@oag.state.md.us

*Attorneys for Defendants*

Dated: July 1, 2014