**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | | |
|---|---|---|
| JOSEPH INNES, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:13-cv-02800-DKC |
| BOARD OF REGENTS, *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * *

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION IN LIMINE TO PRECLUDE TESTIMONY OF HEATHER YORK**

Because the opinions of Plaintiffs' expert Heather York are the product of her specialized knowledge and experience, are the product of a recognized measure for assessing the accuracy of captioning, and will be helpful to the trier of fact in this case, the Court should admit them. In the alternative, if the Court finds either that expertise is not required in the subject area or that Ms. York is not sufficiently qualified, Ms. York should still be permitted to testify to those facts she observed and to the rational lay opinions that flow from her personal observations.

## I. BACKGROUND

As it relates to this Motion, this litigation concerns the University of Maryland's failure to provide effective communication at University football and basketball games for individuals who are deaf. Plaintiffs' Second Amended Complaint alleges that despite years of requests by Plaintiffs, Defendants continue to fail to provide captioning that results in effective communication at football games at Byrd Stadium and basketball games at the Comcast Center. Prior to the 2013 football season, it is undisputed that Defendants provided no auxiliary aids or

services. Beginning with the 2013 football season, Defendants provided auxiliary aids and services that Plaintiffs allege do not provide effective communications, as required by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

As part of their case, Plaintiffs retained Heather York as an expert on captioning. Ms. York has worked in the field of captioning for 22 years for VITAC, the largest provider of closed captioning in the country.[1] She is Vice President of Marketing at VITAC.[2] Throughout her time at VITAC she has worked on many aspects of the captioning process – from advising private buyers on the captioning requirements to trouble-shooting captioning problems.[3]

Ms. York's opinions on the standards in the field of captioning are reliable and relevant and will aid the trier of fact and the court in understanding the gap between what was provided by Defendants during the 2013-2014 athletic season and what effective captioning. To develop her opinions of the system, Ms. York attended three University of Maryland sporting events where she could both hear what was being announced and read the captions being delivered to hand-held devices.[4] In that way, she could measure: (1) the accuracy of the captions, (2) whether everything being spoken was being captioned, and (3) the speed of the caption presentation. Ms. York also reviewed the caption transcripts provided by Defendants for 2013 football games.[5]

Ms. York's testimony is well within the bounds set by Federal Rule of Evidence 702 as interpreted by *Daubert* and its progeny. Moreover, even if Ms. York is not qualified as an expert, the court should still admit her proffered testimony regarding her experiences at the football and basketball games she attended, as well as any lay opinions that rationally follow.

[1] Ex. 1, Heather York Declaration at ¶ 10.
[2] Ex. 1 at ¶ 1.
[3] *Id.* at ¶¶ 1-6; Ex. 2, Heather York Deposition (April 23, 2014) at 8:15 – 13:20; 16:21 – 21:20.
[4] Ex. 1 at ¶ 10.
[5] *Id.* at ¶ 11.

Among her other observations, Ms. York found that certain aural information at football games was not captioned at all.[6] That observation is admissible.

## II. LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"A district court considering the admissibility of expert testimony exercises a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant." *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 260 (4th Cir. 1999). To admit expert testimony, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Courts engage in a two-part inquiry:

> The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue.

*Westberry*, 178 F.3d at 260 (citations omitted); *see also Whitfield v. S. Maryland Hosp. Inc.*, CIV.A. DKC 12-2749, 2014 WL 923255 at *4 (D. Md. Mar. 7, 2014). To satisfy the two-prong standard laid out above, courts recognize two different types of expert testimony: "[p]urely scientific testimony" and "[e]xperiential expert testimony." *United States v. Wilson*, 484 F.3d

---

[6] *Id.* at ¶ 19-20.

267, 274 (4th Cir. 2007) ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.").

Experiential expert testimony does not "rely on anything like a scientific method." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note). Rather, "[s]o long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note).

The proponent of expert testimony bears the burden of production to come forward with evidence to support its contention that an expert's testimony would be both reliable and helpful. However, a court need not be convinced that the proffered expert testimony is "irrefutable or certainly correct." *United States v. Moreland*, 437 F. 3d 424, 431 (4th Cir. 2006) (overruled on other grounds). Instead, "[t]he party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence." *Young v. Swiney*, __ F. Supp. 2d __, 2014 WL 2458405 at *12 (D. Md. May 30, 2014). This is a lower standard of reliability than the merits standard of correctness. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994). As explained below, Ms. York's testimony is valid experiential expert testimony and is both reliable and relevant. Thus, the Court should deny Defendants' motion to exclude.

## III. ARGUMENT

### A. Ms. York's Qualifications Meet the Standard of Rule 702.

Because Ms. York has extensive work experience in the field of providing captioning, she is an expert pursuant to Fed. R. Evid. 702. Because work experience can be the foundation for expertise, Defendants' attempt to discredit Ms. York's testimony because she received an undergraduate degree in a different field than her area of professional expertise and has not published peer-reviewed papers about captioning is misguided. Courts have no requirement that

an individual must have an undergraduate degree or other extensive formal training in their field to qualify as an expert witness. *See, e.g.*, *Waldorf v. Shuta*, 916 F. Supp. 423, 430 (D. N.J. 1996) (holding that "[a] court may not exclude expert testimony just because expert lacks the degree or training that district court thinks most appropriate.").

Instead of school, years of experience in a field can qualify an individual as an expert. For instance, in a recent case in the United States Court of Appeals for the Fourth Circuit, the court upheld a decision by Judge Blake to admit an expert in decoding solely based on her experience in the field of decoding. *United States v. Garcia*, 752 F.3d 382, 391 (4th Cir. 2014).[7] In that case, the defendant argued that the expert's experience was insufficient. *Id.* at 390. The court held that while the expert had less experience than some others, the precise number of years or number of investigations is not dispositive because "[e]very expert has a first time." *Id.* at 391. The Court noted that "[i]t is the quality of [the expert's] experience . . . on which the district court properly focused in finding her qualified as a decoding expert." *Id.* In this case, Ms. York's work in many areas of the captioning world – from advising the government on requirements to troubleshooting production issues – similarly qualifies her.

---

[7] Many other courts have held similarly that experience can fulfill the requirements of Rule 702. *United States v. Wilson*, 484 F.3d at 276 (officer's "extensive 'experience' [in narcotics investigations] qualified him to testify as an expert based on his 'specialized knowledge' of drug traffickers' coded vernacular."); *United States v. Alatorre*, 222 F.3d 1098, 1104 (9th Cir. 2000) (not an abuse of discretion where trial court qualified Customs Service Special Agent as expert on drug prices and gang structure based on his background and "experiential basis of his knowledge"); *U.S. E.E.O.C. v. E.I. du Pont de Nemours & Co.*, 406 F. Supp. 2d 645, 653 (E.D. La. 2005) (plaintiff's expert was qualified on the basis of her extensive experience with the ADA as CEO of an ADA consulting firm, numerous speeches on the ADA, and work with businesses, educational institutions, and governments to facilitate compliance with the ADA); *Waldorf v. Shuta*, 916 F. Supp. 423, 430 (D.N.J. 1996) (plaintiffs' expert was qualified to testify as an expert in the field of vocational rehabilitation due to previous work experience helping people with disabilities find employment).

Ms. York has sufficient experience evaluating captions and sufficient knowledge regarding the captioning process for her opinions to be reliable and helpful as expert testimony. Ms. York has extensive experience in the field of captioning. Since 1992, she has worked for VITAC, the country's largest provider of closed captioning. Ms. York has been responsible for on-air continuity and quality control of more than 600 hours of broadcast captioning per week.[8] Ms. York has worked with NBC, ABC, the Big Ten Network, Bowling Green University, and Ohio State University to ensure that accurate captioning is delivered for web programming.[9] When § 508 of the Rehabilitation Act was passed requiring government agencies to meet certain accessibility standards, she spearheaded the effort to work with government agencies to advise them on what captioning services they needed.[10] Ms. York also serves as VITAC's advocacy expert in various organizations, working with caption users and serving on the FCC's Consumer Advisory Committee and the Coalition of Organizations for Accessible Technology.[11] She assisted in passing the Twenty-First Century Communications and Video Accessibility Act (CVAA), signed into law by President Obama on October 8, 2010, providing for a more accessible internet.[12]

Ms. York is an also an expert in captioning standards and has advised on creation of those standards.[13] She was a consumer liaison between the Council of Organizations for Accessibility Technology and the Society of Motion Picture and Television Engineers and was responsible for helping to create a standard to ensure that captioning presented on television is

---

[8] Ex. 1 at ¶ 1.
[9] *Id*. at ¶ 22.
[10] Ex. 2, York Dep. at 11:7-20.
[11] Ex. 1 at ¶ 1.
[12] *Id*. at ¶ 2; Ex. 2, York Dep. at 29:11 – 38:11.
[13] Ex. 1 at ¶¶ 3 and 7.

transferrable to digital environments.[14] For several years, Ms. York has worked closely with the Federal Communications Commission ("FCC"), advocates, and industry groups as the FCC examines its closed-captioning standards.[15] She served as a "captioning vendor," working with industry and the FCC in preparation for the FCC's review of its Closed Captioning of Video Programming rules in February of 2014.[16] Ms. York was also chosen to be a member of the FCC's Consumer Advisory Committee Subgroup, the Digital Closed Captioning and Video Description Working Group, and was appointed as a member of the FCC's Video Programming Accessibility Advisory Committee (VPAAC) from 2010 to 2012, in which she helped to research and author the report "VPAAC User Interfaces and Video Programming Guides and Menus." This report created standards and requirements for display of captions in an IP environment as required by the CVAA.[17] Because Ms. York has been involved in setting standards in the industry, she has the expertise required to explain what those standards are.

Because Defendants can find no genuine critique of Ms. York's qualifications, they catalogue a lengthy list of things Ms. York is not, without providing any evidence that any of those missing factors is determinative or even relevant. The first complaint about her is the biggest red herring of all – that Ms. York has never qualified as an expert before. That is, of course, true of all experts at some point in their careers. Importantly, Defendants can point to no instance in which any court refused to qualify Ms. York as an expert, because there is none.[18]

Defendants next criticize the field in which Ms. York earned her degrees and list a number of fields in which she did not earn degrees. They provide no explanation of why one

---

[14] *Id.* ¶ 3.
[15] *Id.* ¶ 1.
[16] *Id.* ¶ 6.
[17] *Id.* ¶ 4-5.
[18] *Id.* ¶ 8.

needs education in the fields of human factors, disability services, psychology, or any of the other listed fields in order to learn, work with, and advise on captioning. It is similarly unimportant that Ms. York has no publications or specialized licensing; many experts do not. One can be an expert in the field of automobile repair without having published a scholarly paper on the topic. As set out above, law enforcement agents of various kinds are routinely qualified as experts in various fields based solely on the strength of their actual work experience, not on their authorship of scholarly writings.

Moreover, Defendants are hypocritical in their attacks, criticizing Ms. York's education and lack of scholarly writing on the one hand, and on the other suggesting that Larry Goldberg is a "more qualified" expert (although he has not been identified as a witness in this case by any party). Mr. Goldberg has a degree in Broadcast Journalism,[19] and there is no indication that the publication authored by Mr. Goldberg called to the Court's attention is peer-reviewed. Moreover, the FCC appointed Ms. York and Mr. Goldberg to the same advisory committee.[20] Given the similarity between Mr. Goldberg, whom Defendants hold out as a "more qualified" expert, and Ms. York, whom Plaintiffs have called, Defendants should find her well-qualified to give an expert report.

In sum, Ms. York is qualified by her experience, training, and knowledge to testify about the standards for captioning quality in the captioning industry.

**B. Because Defendants Overstate the Admissibility Threshold for Expert Testimony, Their Evaluation of Ms. York is Incorrect.**

The court is not required to determine that the testimony "is irrefutable or certainly correct" when it evaluates expert testimony under *Daubert*. *See United States v. Moreland*,

---

[19] *See* Biography of Larry Goldberg, *available at* http://www.boston-ia.org/library/bios/Larry_Goldberg_Bio.html (last visited July 16, 2014).

[20] Ex. 2, York Dep., 29:16-30:3; 30:18-31:3.

437 F. 3d at 431. Nor must expert testimony be a product of the expert's own peer-reviewed research. *See, e.g., U.S. E.E.O.C. v. E.I. du Pont de Nemours & Co.*, 406 F. Supp. 2d at 653 (plaintiff qualified as expert despite no mention of peer-reviewed research); *Waldorf v. Shuta*, 916 F. Supp. at 430 (same). Reliability, not scholarly papers, is the linchpin of the analysis, and Ms. York's testimony is based on a variety of word error rate calculations which are the standard in the field and reliable.

*i. Ms. York's testimony is reliable because she follows the industry standard for evaluating captioning quality.*

Ms. York's testimony is reliable because it is based on years of experience and personal observations and it uses the industry standard. "The first prong of this [*Daubert*] inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy." *Westberry*, 178 F.3d at 260–61 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). Ms. York's testimony is reliable because she calculated the accuracy of captions using the method that is standard in the field of captioning and applied it both to transcripts of games that she attended and numerous other game transcripts that Defendants produced. Defendants attack Ms. York by proffering an article (authored by someone they do not call as an expert) that posits measuring accuracy in a different way. The existence of this one article does more to support Ms. York's approach than to detract from it. The article, "*Caption Accuracy Metrics Project: Research into Automated Error Ranking of Real-time Captions in Live Television News Programs*" debunks the idea that Ms. York is an "outlier expert," and shows that the technique she used to measure Defendants' captions is solidly mainstream.[21]

[21] Goldberg Article, CM/ECF 61-4 at 2.

First, this article establishes that the approach that Ms. York used to calculate captioning accuracy is, indeed, the industry standard for measuring captioning accuracy.[22] The article does not examine measurements of timeliness and completeness, although both the National Court Reporting Association and the FCC, as well as Ms. York, measure real-time captions based on timeliness, completeness, and accuracy.[23] The article also ratifies Plaintiffs' explanation of the shortcomings of voice recognition software, explaining that "[t]ranscripts created by automatic speech recognition systems have inherent defects and in most cases are less accurate than a comparable caption transcript."[24]

Most importantly, however, the article affirms Ms. York's conclusion that the standard WER of 50% found in Defendants' captions indicates "poor or unacceptable quality by any measure," even when evaluated using a weighted WER.[25] Finally, the mere existence of a different approach to measuring captioning does not render Ms. York's approach any less valid. Defendants have made no effort to apply the weighted WER to their own captions and do not even argue that applying this approach would measure their captions as any more readable than Ms. York's method. Nor have they proffered an expert to suggest that the weighted WER is more widely used than the standard WER – or even that the weighted WER is used at all. In fact, the length of time that the article devotes to explaining the weighted WER and how it differs from the standard WER approach leads more readily to the conclusion that the weighted WER

---

[22] *Id.* at 3-5 (describing the Word Error Rate calculation as "in use for some time" and explaining how it works).
[23] Ex. 1 at ¶ 16.
[24] Goldberg Article, CM/ECF 61-4 at 11.
[25] *Id.* at 9-10.

represents the views of an "outlier expert." Indeed, as Mr. Goldberg's article concedes, the standard WER approach is the industry standard.[26]

Far from disqualifying Ms. York as an expert witness, Defendants' objections to her opinion are best reserved for the "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" that the *Daubert* court identified as "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

*ii. Ms. York's testimony is relevant because she evaluated Defendants' captioning system.*

Ms. York's declaration addresses an issue squarely before the Court: whether the captioning system that Defendants used during the 2013-14 football and basketball seasons provides effective communication for deaf and hard of hearing fans. To prepare her declaration, Ms. York attended three games at Defendants' venues, reviewed the captions that appeared during those games (when possible), and reviewed transcripts of captions that appeared during games. Ms. York's testimony is relevant to demonstrate that Defendants' captioning system does not provide effective communication.

Whether or not Ms. York conferred with Plaintiffs is irrelevant. Plaintiffs are not arguing that their reading skills are such that captioning must be of a certain accuracy to provide effective communication. They are arguing that Defendants' captions are so poor that nobody – not even the best reader – could make sense of them.[27] Ms. York's report lends credence to Plaintiffs' complaints by showing what the mainstream captioning industry considers to be minimum acceptable quality standards and how far below these standards Defendants' captions fall.

[26] *Id.* at 3.
[27] Ex. 3, Joseph Innes Dep., 42:18-43:14; 44:18-45:8; Ex. 4, Sean Markel Dep., 37:15-38:12.

**C. Even if Ms. York is not qualified as an expert, her observations at the game are admissible evidence relevant to the quality of the captions.**

The Court should qualify Ms. York as an expert. However, even if she does not so qualify or the Court determines that the accuracy of the captions is not a proper subject for expert testimony, Ms. York's observations are still admissible because they are based on her personal observations of the captioning system the Defendants provided at several of the games at issue in this case. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge."). That foundation may come from the witness's own testimony. *Id*. Because Ms. York's observations are both from her personal knowledge and are relevant, her factual testimony about what she observed is admissible.

Ms. York's lay opinions that rationally flow from her personal observations are also admissible. Federal Rule of Evidence 701 permits lay opinions that are (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness or to determine a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Under this Rule, Ms. York should be permitted to testify to opinions not based on specialized knowledge regarding industry standard of care.[28] Because Ms. York attended three games, the Court should admit her testimony about those games. Ms. York can testify that the announcements made over the public address system (1) contained information not reflected in the captioning transcripts; (2) were made long before the captions appeared; and (3) contained different words and phrases than the captioning transcript. Therefore, her lay opinion would be

[28] *Cf. TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994) (excluding testimony of lay opinion witness whose testimony was not "based on the perception of the witness.").

based on personal knowledge and directly relevant to the facts at issue in the case and should be admitted.

## IV. CONCLUSION

Because Ms. York is a seasoned practitioner in the field of captioning and her testimony will help the trier of fact understand the evidence and testimony regarding captioning, the Court should deny Defendants' Motion in Limine and allow her testimony.

Respectfully submitted,

/s/

Joseph B. Espo, Fed. Bar No. 07490
Brooke E. Lierman, Fed. Bar No. 17879
BROWN, GOLDSTEIN, & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, Maryland 21202-6701
T: (410) 962-1030
F: (410) 385-0869
jbe@browngold.com
blierman@browngold.com

Caroline Jackson, Fed. Bar No. 18545
THE NATIONAL ASSOCIATION OF
THE DEAF LAW AND ADVOCACY CENTER
8630 Fenton St., Suite 820
Silver Spring, Maryland 20910
T: (301) 587-1788
F: (301) 587-1791
caroline.jackson@nad.org

*Attorneys for Plaintiffs*

Dated: July 18, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of July, 2014, a copy of the foregoing Opposition to Defendants' Motion in Limine to Preclude Any Testimony by Heather York and proposed Order was delivered through the Court's CM/ECF system to all attorneys of records.

/s/
Joseph B. Espo