IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH INNES, et al.                    :

                                        :

         v.                             :    Civil Action No. DKC 13-2800

                                        :

THE BOARD OF REGENTS OF THE             :
UNIVERSITY SYSTEM OF MARYLAND,
et al.                                  :

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination case is a motion for reconsideration filed by Defendants Board of Regents of the University System of Maryland ("the Board of Regents") and the University of Maryland College Park ("the University of Maryland") (collectively, "Defendants"). (ECF No. 83). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion for reconsideration will be denied.

**I.   Background**

The facts and procedural history have been set forth in prior opinions and need not be repeated here. (*See* ECF Nos. 64 & 80). Plaintiffs, three deaf or hard of hearing individuals who attend sporting events at the University of Maryland, contend that Defendants failed to provide effective

communication for deaf or hard of hearing patrons at Byrd Stadium and Comcast Center[1] and on the website, UMTerps.com. After discovery concluded and the parties cross moved for summary judgment, the court issued a memorandum opinion and order on March 16, 2015 denying both motions. (ECF Nos. 80 & 81). More facts will be provided in the analysis section below.

Defendants moved for reconsideration on March 27, 2015. (ECF No. 83). Plaintiffs requested several extensions of time to pursue settlement, and ultimately filed an opposition on July 13, 2015 when settlement discussions apparently failed. (ECF No. 93). Defendants replied. (ECF No. 94).

## II. Standard of Review

As the parties acknowledge, because Defendants seek reconsideration of a non-final, interlocutory order, their motion is properly analyzed under Fed.R.Civ.P. 54(b). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R.Civ.P. 54(b). In the United States Court

---

[1] Defendants indicated that Byrd Stadium now is named Capital One Field at Byrd Stadium and Comcast Center now is named Xfinity Center, but for consistency purposes, the parties refer to the stadiums as Byrd Stadium and Comcast Center. (ECF No. 83-1, at 4).

of Appeals for the Fourth Circuit, the precise standard governing a motion for reconsideration of an interlocutory order is unclear. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472 (4th Cir. 1991). While the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003), courts frequently look to these standards for guidance in considering such motions. *Akeva, LLC v. Adidas Am., Inc.,* 385 F.Supp.2d 559, 565-66 (M.D.N.C. 2005).

> Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided. Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions. Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice.

*Id.* (citations omitted); *see also Beyond Sys., Inc. v. Kraft Foods., Inc.,* No. PJM-08-409, 2010 WL 3059344, at *1-2 (D.Md. Aug.4, 2010) (applying this three-part test when evaluating a motion for reconsideration under Rule 54(b)). Importantly, a motion for reconsideration under Rule 54(b) may not be used

merely to reiterate arguments previously rejected by the court. *Beyond Sys., Inc.*, 2010 WL 3059344, at *2.

## III. Analysis

Defendants raise the following arguments in their motion for reconsideration: (1) Plaintiffs now lack standing to pursue equitable and declaratory relief regarding the stadiums; (2) the claims for equitable and declaratory relief as to the stadiums now are moot; (3) the demanded accommodation by Plaintiffs as to the stadiums poses an undue burden as a matter of law; (4) all of Plaintiffs' claims concerning the stadiums are barred by the statute of limitations; and (5) Plaintiffs waived all claims for monetary damages as to the website. (ECF No. 83-1).

Defendants represent that since the summary judgment briefing, the University has installed fully functional ribbon boards in both stadiums. (*See* ECF No. 83-2 ¶ 9, Kaplan Aff. ("The installation of the ribbon boards was completed at Byrd Stadium in August 2014, in time for the season's first home football game, and at the Xfinity Center in October 2014, in time for the season's first home basketball game.")). Joshua Kaplan, an Associate Athletic Director for Facilities, Operations, and Events at the University of Maryland College Park, submitted an affidavit, which states in relevant part:

> 10. The ribbon boards have provided captioning of the aural content broadcasted for football games at Byrd Stadium and men's

and women's basketball games at the Xfinity Center since the beginning of the 2014-15 academic year.  In addition, post-game press conferences for both football and men's and women's basketball games were captioned beginning with the final home football game on November 29, 2014.  Captioning for lacrosse, wrestling, and gymnastics events held in these athletic venues is available if requested on-line two weeks in advance of the event.

11. Beginning with the first home football game in August 2014, the ribbon board captioning has been provided by Home Team Captions, a vendor that uses a 'caption writer.'  The caption writer is an individual who types the captions in real time as the aural content is broadcasted, rather than relying on speech-to-text software to generate captions.  The cost to the University for Home Team Captions' services is $325.00 per basketball game and $565 per football game.  Captioning for post-game press conferences is an additional cost.

(ECF No. 83-2 ¶¶ 10-11).

## A.   Standing

Defendants argue that Plaintiffs now lack standing to pursue equitable relief because, by installing the ribbon boards at both stadiums, the University "essentially [has] remedied the alleged discriminatory conditions of which the plaintiffs complained." (ECF No. 83-1, at 12).  Defendants further contend that Plaintiffs are not entitled to injunctive or declaratory relief as to the stadiums because the changes sought recently have been implemented and Plaintiffs cannot show that they will

"suffer [an] injury which is concrete, particularized and imminent." (ECF No. 83-1, at 15). Defendants cite an affidavit from Mr. Kaplan, in which he attests that "[t]he University Athletic Department will not remove, deactivate, or significantly alter the ribbon boards at Byrd Stadium and the Xfinity Center, or discontinue providing captioning on those ribbon boards, in the near or foreseeable future." (ECF No. 83-2 ¶ 13). Plaintiffs counter that Defendants conflate standing and mootness, and that because standing is measured at the commencement of litigation, they have standing.

As an initial matter, the March 16 opinion did not even reach the issue of the propriety of the various forms of relief sought in the second amended complaint (*e.g.,* compensatory damages and injunctive and declaratory relief) because liability could not be determined as a matter of law. The court stated: "With the denial of summary judgment, [] it is premature to address questions of damages or other remedies." (ECF No. 80, at 31). Second, Defendants in *Feldman v. Pro Football, Inc.*, 579 F.Supp.2d 697 (D.Md. 2008), raised a similar standing issue. Specifically, defendants in *Feldman*, a case involving alleged violations of Title III, argued that plaintiffs lacked standing because: "(1) Plaintiffs cannot establish an injury in fact because the alleged discrimination is no longer occurring and because there is no real and immediate threat that they will be

discriminated against by Defendants in the future; and (2) Plaintiffs' allegations of prior injury cannot be redressed by this Court's grant of injunctive or declaratory relief because Defendants' actions have remedied any prior injury." *Id.* at 704-05.  Judge Williams rejected defendants' standing argument and his rationale applies here:

> "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is "[t]he requisite personal interest that must exist at the commencement of the litigation." *Friends of the Earth, Inc., v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  *See also Johnson v. Bd. of Regents of the Univ. of Georgia*, 263 F.3d 1234, 1267 (11th Cir. 2001) ("[S]tanding to sue is generally measured at the time of the Complaint, with the effects of subsequent events generally analyzed under mootness principles."); *Equal Access Educ. v. Merten*, 325 F.Supp.2d 655, 667 (E.D.Va. 2004) ("It is clear that standing must exist at the time suit is filed."); *Richmond Medical Center for Women v. Gilmore*, 55 F.Supp.2d 441, 472 (E.D.Va. 1999) (noting that actions taken after commencement "do not affect the standing inquiry at all because standing is measured at the time the action is filed.").
>
> To establish standing, Plaintiffs must show that: (1) they "suffered an injury in fact – an invasion of a legally protected interest which is (1) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (citations and internal quotation marks omitted). "The party invoking federal jurisdiction has the burden of establishing these elements." *Id.* at 561.

When Plaintiffs filed the present suit, they were clearly suffering an injury in fact. Plaintiffs did not have access to any of the aural content available to hearing Redskins fans at FedExField. Moreover, Plaintiffs were likely to suffer harm in the future, as they planned to attend future Redskins games. Defendants caused this harm, and declaratory and injunctive relief by this Court would have redressed Plaintiffs' injury.

In addition, Plaintiffs certainly have standing to litigate the issues regarding music captioning and line of sight issues. At the time of the Complaint, Plaintiffs suffered injuries because they did not have access to music captioning and because information allegedly was not being effectively communicated to them. Defendants' actions clearly caused these injuries, and injunctive or declaratory relief by this Court would redress Plaintiffs' injuries. As such, Plaintiffs had standing to file this action.

*Id.* at 705-06.

Here, too, at the time Plaintiffs filed their complaint, they could not hear the aural content projected at Byrd Stadium and the Comcast Center and argued that the communication provided by a tablet or handheld device was not timely and did not ensure that deaf or hard of hearing fans have equal access to games. The cases that Defendants cite are factually

8

dissimilar and inapplicable under these circumstances. For instance, in *Proctor v. Prince George's Hosp. Center*, 32 F.Supp.2d 830, 832 (D.Md. 1998), plaintiff could not establish that he himself faced a real and immediate threat of future harm from defendant and not merely a conjectural or hypothetical threat. Plaintiff in *Proctor* relied on the fact that "conditions still exist[ed] at [Prince George's Hospital Center] that ma[de] it unlikely deaf patients [were] being provided with equal and effective communication." *Id.* at 832-33; *see also Gregory v. OTAC, Inc.*, 247 F.Supp.2d 764, 771 (2003) ("In opposing defendants' motion for summary judgment, plaintiff has not offered evidence establishing that he has visited the Restaurant in recent months, that he has not been able to use the ramp in place and that he has therefore been unable to gain safe access to the Restaurant because of the location of the ramp. It is apparent that plaintiff has not on this record shown that he will suffer future discrimination at the hands of the defendants in violation of the ADA."). That is not the situation here where Plaintiffs alleged in their complaint that they continue to frequent sporting events at the University and challenged the adequacy of the hand-held devices provided by Defendants. Accordingly, Defendants have not provided a basis to reconsider the March 16 opinion on standing grounds.

**B. Mootness**

Next, Defendants argue that Plaintiffs' discrimination claims pertaining to the stadiums now are moot. (ECF No. 83-1, at 21). Plaintiffs counter that their claims for damages regarding the football stadium and basketball arena remain live regardless of the outcome of Defendants' motion for reconsideration, and for purposes of injunctive or declaratory relief, Defendants cannot prove mootness for two reasons: (1) Defendants may cease providing the captioning service at any time; and (2) a dispute exists regarding whether the captioning currently provided constitutes effective communication. (ECF No. 93, at 19).

"The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Defendants carry a heavy burden when asserting mootness and are required to demonstrate: (1) there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F.Supp.2d 456, 461 (D.Md.

10

2000) (*citing County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).   If both elements are satisfied, the case is moot "because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631.   The Fourth Circuit explained in *Feldman v. Pro Football, Inc.*, 419 F.App'x 381, 387 (4th Cir. 2011):

> A case may remain live even if the events giving rise to the lawsuit cease. The "voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit." *United States v. Jones*, 136 F.3d 342, 348 (4th Cir. 1998). The exception to this general rule is when there is "*no* reasonable expectation that the wrong will be repeated." *Lyons P'Ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001) (*quoting United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added)).   "But this exception is just that – an exception – and defendants 'face a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to [their] old ways[] after the threat of a lawsuit has passed." *Id.*

Defendants argue that there is no reasonable expectation that they will return to their prior conduct "because[] having made a multi-million dollar capital investment in technology to provide ribbon boards and captioning, the Defendants have no incentive or reason to undo that investment.   Moreover, as public bodies answerable to the citizenry and the media, Defendants would have considerable explaining to do if, after

11

making the large expenditure for this equipment, they arbitrarily decided to pull the plug on it." (ECF No. 83-1, at 24-25). As stated above, Mr. Kaplan submitted an affidavit attesting that the "University Athletic Department will not remove, deactivate, or significantly alter the ribbon boards . . . or discontinue providing captioning on those ribbon boards, *in the near or foreseeable future*." (ECF No. 83-2 ¶ 5) (emphasis added). Plaintiffs counter that "[t]he possibility of the recurrence of a violation is a real possibility here given that Defendants could either cease scheduling the captioner to save money, and/or could then use the ribbon boards to generate additional advertising revenue." (ECF No. 93, at 20).

The analysis from *Feldman*, 419 F.App'x at 387-88, applies here:

> While we commend defendants for providing most of the relief that plaintiffs requested and for engaging with plaintiffs on the benefits and burdens of particular auxiliary aids, we agree with the district court that defendants have not discharged their heavy burden of showing no reasonable expectation that they will repeat their alleged wrongs. Although defendants were investigating possible auxiliary aids years before plaintiffs' lawsuit, *they did not actually provide captioning until after plaintiffs filed their complaint*. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (noting that "whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit" is relevant to the voluntary cessation

analysis).   Further, this is not a case in
which plaintiffs "control[] [their] own
fate." *Incumaa [v. Ozmint]*, 507 F.3d [281,]
289 [4th Cir. 2007]. *Defendants maintain
complete control over the captioning*. They
hired one stenographer, Stephen Clark, as an
independent contractor to provide the
captioning. If Clark for some reason cannot
provide his services at a Redskins home
game, he arranges for another certified
stenographer to take his place. Given the
ease with which defendants could stop
providing captioning, we simply cannot say
that they have made an affirmative showing
that the continuation of their alleged ADA
violations is nearly impossible." *Lyons*,
243 F.3d at 800; *see also Tandy v. City of
Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004)
(observing in an ADA case that defendants'
heavy burden under the voluntary cessation
doctrine is "typically . . . met only by
changes that are permanent in nature and
that foreclose a reasonable chance of
recurrence").

(emphases added).[2]   Defendants did not install ribbon boards and

provide captioning until after the lawsuit was filed, although

they offered captioning on hand-held devices as an interim

measure. *Cf. Ruggier v. Go Mart, Inc.*, Civ. Action No. 2:15-cv-

---

[2] Defendants contend that "*Feldman* is distinguishable as a
case brought under Title III of the ADA, which imposes stricter
standards that Title II." (ECF No. 83-1, at 18). The fact that
*Feldman* was a disability discrimination case brought under Title
III is inapposite to the mootness analysis, however. Moreover,
many of the cases on which *Defendants* rely in challenging
standing and mootness also arise under Title III of the ADA.
*See, e.g.*, *Proctor*, 32 F.Supp.2d 830; *Burleson v. Edisto Village
Orangeburg, LLC*, C/A No. 5:09-1065-MBS, 2011 WL 744733 (D.S.C.
Feb. 23, 2011); *Norkunas v. Tar Heel Capital Wendy's LLC*, Civ.
Action No. 5:09-CV-00116, 2011 WL 2940722 (W.D.N.C. July 19,
2011); *Ruggier v. Go Mart, Inc.*, Civ. Action No. 2:15-cv-03412,
2015 WL 3466312 (S.D.W.Va. June 1, 2015).

03412, 2015 WL 3466312, at *3 (S.D.W.Va. June 1, 2015) ("Both parties in this matter agree that Go-Mart altered its restroom facilities to correct the ADA violations *prior to Mr. Ruggier's initiation of this lawsuit.* As a result, Mr. Ruggier has already obtained the sole relief available under the ADA[.]") (emphasis added). Moreover, as in *Feldman*, Defendants also could potentially cease providing captioning. As Plaintiffs point out, unlike many of the cases cited by Defendants to support mootness, here, they "have not installed or implemented some permanent structure that serves only to cure the discrimination and that would be costly to remove." (ECF No. 93, at 20); *Cf. Norkunas v. Tar Heel Capital Wendy's LLC*, Civ. Action No. 5:09-CV-00116, 2011 WL 2940722, at *4 (W.D.N.C. July 19, 2011) ("Structural changes to a commercial building and its grounds are generally considered permanent. Here, as many of the alterations are literally set in stone, the Court is persuaded that there is no reasonable expectation that the alleged violation will recur – satisfying the first element of the *Davis* test."). Plaintiff in *Norkunas* disputed the compliance with the ADA of only one of five properties and the district court concluded that the claims were moot as to the four properties for which Defendants undisputedly made structural changes to comply with the ADA. Here, however, Plaintiffs dispute that the changes adopted by Defendants

14

provide "effective communication." *Cf. Steelman v. Executive Suites of Stuart, Inc.*, No. 2:12-cv-14019-KMM, 2012 WL 4896820, at *2 (S.D.Fla. Oct. 15, 2012) ("Plaintiff inspected the Facility on August 14, 2012 and found the Facility fully compliant with the ADA. . . . Since it is undisputed that Defendant has complied with the ADA, summary judgment in favor of Defendant is warranted."). Accordingly, Defendants have not shown that a continuation of their alleged ADA and Rehabilitation Act violations is nearly impossible. *See Feldman*, 419 F.App'x at 388 ("Because we agree with the district court that defendants have not shown that a continuation of their alleged ADA violations is nearly impossible, we likewise treat all of plaintiffs' requested relief as presenting a live claim.").

Defendants also have not established that subsequent events "completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631. The "new evidence" that Defendants have submitted regarding the installation of ribbon boards at both stadiums still does not enable the court to adjudicate Plaintiffs' failure to accommodate claims under the Rehabilitation Act and the ADA as a matter of law. The parties continue to dispute the adequacy of Defendants' proposed accommodation - installation of ribbon boards at the stadiums and provision of captioning through Home Team Captions - and

15

whether such accommodations provide "effective communication" for deaf patrons. Defendants assert that the University installed the ribbon boards after engaging in on-site consultations with Plaintiffs and their representatives. (ECF No. 83-2 ¶ 7). Plaintiffs contend that any agreement from them regarding the sufficiency of the installation of ribbon boards and captioning happened in the context of settlement negotiations and "was contingent on other steps to be taken by Defendants. Those settlement talks failed." (ECF No. 93, at 23). Irrespective of any admissibility issues with statements made during the course of settlement, there is a genuine dispute of material fact concerning whether the provided accommodation ensures effective communication for deaf patrons at Byrd Stadium and the Comcast Center. Plaintiffs have submitted affidavits stating that the ribbon boards appear on one side of the football stadium only. With regard to the ribbon boards at Comcast Center, Plaintiffs aver that "[b]ecause of the size of the screens, the text had to move very quickly in order to keep up with the announcements. It moved so quickly that I had a hard time following it, and therefore did not find the captions to be effective at communicating information." (ECF No. 93-2, at 3, Markel Aff.). Accordingly, the second element of the *Davis* test also has not been satisfied and a live controversy exists.

**C. Undue Burden**

Defendants also argue that putting aside any justiciability issues, they are entitled to summary judgment on the disability discrimination claims pertaining to the stadiums because "new evidence confirms the demanded accommodation posed an undue burden." (ECF No. 83-1, at 28). Defendants explain: "At the time of [the] original summary judgment briefing, the installation of the ribbon boards was still a future and therefore arguably uncertain event, but now the installation, and its actual cost, are established fact." (*Id.*). Defendants argue – much like they did during the course of summary judgment – that the $3.75 million incurred in connection with the purchase and installation of the captioning boards constitutes an undue hardship. (ECF No. 83-1, at 29-30; ECF No. 83-2 ¶ 8, Kaplan Aff.). Defendants further highlight that "t]he cost to the University for Home Team Captions' Services is $325.00 per basketball game and $565.00 per football game. Captioning for post-game press conferences is an additional cost." (ECF No. 83-2 ¶ 11, Kaplan Aff.).

Defendants have the burden to establish the undue burden affirmative defense. Without any additional information about the applicable budget and/or financial realities, the fact that the purchase and installation of the captioning boards cost a total of $3.75 million does not establish undue burden as a

17

matter of law. Defendants argue in their motion for reconsideration that the $3.75 million expended exceeds the amount that the court found constituted undue hardship as a matter of law in *Reyazuddin v. Montgomery County, Maryland*, 7 F.Supp.3d 526 (D.Md. 2014), but the Fourth Circuit recently reversed that decision, finding that genuine disputes of material fact precluded summary judgment on the County's undue hardship affirmative defense.   The Fourth Circuit stated that "while cost is important, it cannot be viewed in isolation. Rather, it is the relative cost, along with other factors, that matter."   *Reyazuyddin v. Montgomery County, Maryland*, 789 F.3d 407, 418 (4th Cir. 2015).

A Rule 54(b) motion may not be used to rehash previous arguments.   Evidence presented by both parties concerning "undue hardship" was discussed in the March 16 opinion, and the court determined that "there is a genuine dispute of material fact as to whether providing 'line of sight captioning,' regardless of when Defendants first received notice, would have constituted an undue burden and whether Defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act by not implementing Plaintiffs' requested accommodation when the request was made." (ECF No. 80, at 24).[3]

---

[3]   In their opposition to Defendants' motion for summary judgment, Plaintiffs misrepresent the discussion of undue burden

Defendants have not shown that the "additional evidence" warrants reconsideration of the March 16 opinion as to undue burden.

## D. Statute of Limitations

Citing to an unpublished decision from the Fourth Circuit issued on August 5, 2014 – *Hill v. Hampstead Lester Morton Court Partners LP*, 581 F.App'x 178 (4th Cir. Aug. 5, 2014) – Defendants next argue that "the statute of limitations bars all claimed denials of requested accommodations and auxiliary aids and services in this case preceding September 24, 2010 (three years before the filing of this action), which form the vital core of Plaintiffs' case regarding the Stadiums." (ECF No. 83-1, at 32).

Defendants first raised statute of limitations in their motion to dismiss. The court issued a memorandum opinion on July 1, 2014, which explained, in relevant part:

> *The parties disagree as to when a cause of action under the Rehabilitation Act and the ADA accrues. Defendants view this*

in the March 16, 2015 opinion, however. Plaintiffs incorrectly state that "[t]his Court has already considered and rejected that [the $3.75 million] expenditure constitutes an undue burden as a matter of law." (ECF No. 93, at 27). Indeed, the opinion stated that "the fact that Defendants have now contracted for ribbon board installation from Daktronics, Inc. and purportedly spent approximately $3.75 million on this endeavor does not establish that this could or should have been done earlier." (ECF No. 80, at 23). As explained in the opinion, there is a genuine dispute as to whether the requested accommodation constitutes an undue burden.

*dispute as an architectural barrier case and argue that the statute of limitations begins to run upon completion of the structure of completion of its most recent and relevant alteration.* Defendants believe that Plaintiffs have known – or as regular patrons of the University's facilities, should have known – "since 2007 and 2002 respectively, that [Byrd Stadium and the Comcast Center] did not have the 'line-of-sight' and 'hands-free' display of information they now demand." (ECF No. 34-1, at 17). . . . Contrary to Defendants' assertions, Plaintiffs are not alleging that they are unable to access the athletic facilities at Byrd Stadium or the Comcast Center, nor are they necessarily arguing that architectural barriers preclude their participation in the programs and activities at the University of Maryland. . . .

. . . Here, Plaintiffs assert communication barriers to their participation in athletic events held at the University of Maryland. "In general, to establish a continuing violation the plaintiff must establish that the unconstitutional or illegal act was a . . . fixed and continuing practice." *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (internal citations omitted). "[I]f the plaintiff can show that the illegal act did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'" *A Soc'y Without A Name*, 655 F.3d at 348 (*quoting Nat'l Adver. Co.*, 947 F.2d at 1167). Continuing unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter does not constitute a continuing violation. *Id.*

Here, Plaintiffs assert that *every time they attend athletic events at Byrd Stadium*

> *or the Comcast Center, Defendants fail to*
> *provide the auxiliary aids and services*
> *necessary to ensure effective communication*
> *for Plaintiffs*. . . . Plaintiffs assert
> that the violation did not happen only once;
> according to Plaintiffs, Defendants
> regularly fail to provide them with
> effective communication during athletic
> events. For instance, Dr. Innes cites an
> incident on October 12, 2013, when captions
> on his handheld device were unavailable
> during a game.

(ECF No. 64, at 10-13) (emphases added). Accordingly, Defendants' motion to dismiss on statute of limitations grounds was denied. The opinion explained that Defendants have not shown as a matter of law that Plaintiffs' disability discrimination claims concerning Byrd Stadium and the Comcast Center are time-barred.[4] (*Id.* at 15).

The analysis in *Hill*, 581 F.App'x at 180-181, which involved a request for structural modifications, does not alter the previous conclusion that Defendants have not shown that the failure to accommodate claims as to the stadiums are time-barred. The Fourth Circuit explained:

> The limitations period for a
> Rehabilitation Act claim commences "when the
> plaintiff 'knows or has reason to know of
> the injury which is the basis of the
> action.'" *A Soc'y Without A Name v.*
> *Virginia*, 655 F.3d 342, 348 (4th Cir. 2011)

---

[4] At the summary judgment stage, Defendants' arguments regarding statute of limitations mirrored those made at the motion to dismiss stage, thus it was unnecessary to reiterate the analysis on statute of limitations in the March 16 opinion adjudicating the cross motions for summary judgment.

(quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).   When an individual "engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed."   *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), *superseded in part by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111-2, 123 Stat. 5.   In those circumstances, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. . . .   The existence of past acts and the [plaintiff's] prior knowledge of their occurrence . . . does not bar [a plaintiff] from filing charges about related discrete acts so long as the acts are independently discriminatory."   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).   Thus, a plaintiff who renews a request for a previously denied accommodation "may bring suit based on a new 'discrete act' of discrimination if the [defendant] again denies [the] request."   *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 131 (1st Cir. 2009), and the subsequent denial carries its own, independent limitations period. *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (explaining that if a plaintiff's "new [accommodation] request results in a denial, the time period begins to run anew").

*Hill*, 581 F.App'x at 180-181.   Notably, at no point did Defendants argue that all of the allegedly discriminatory acts fell outside the limitations period, and it is their burden to prove statute of limitations by a preponderance of the evidence. In any event, Plaintiffs do not appear to be seeking damages beyond the three-year time frame.   (ECF No. 93, at 33 ("Nothing about the Fourth Circuit's opinion in *Hill* changes anything

about the Court's prior holding and Order because Plaintiffs are not seeking damages for acts of discrimination that go back more than three years from the date of the filing of the Complaint on September 24, 2013.")).

### E. Website

Finally, Defendants argue *again* that Plaintiffs have expressly waived all claims for monetary damages in connection with their failure to accommodate claims as to the University's website. (ECF No. 83-1, at 34). It has already been acknowledged in two separate opinions that Plaintiffs do not seek monetary damages for alleged violations of the disability laws with respect to the athletic website. (*See* ECF No. 64, at 33 & ECF No. 80, at 31). Curiously, Defendants *still* maintain that they are entitled to "partial summary judgment as to all such formally abandoned claims." (ECF No. 83-1, at 34). It is not necessary to enter judgment on any claim for compensatory damages pertaining to the website because Plaintiffs are not seeking such damages here.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for reconsideration will be denied. A separate order will follow.

_____
/s/
DEBORAH K. CHASANOW
United States District Judge

23